Aaron ALLEN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2009–SC–000842–MR.

Supreme Court of Kentucky.

May 19, 2011.

Steven Jared Buck, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Perry Thomas Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Aaron Allen appeals as of right from a Judgment of the Kenton Circuit Court convicting him of wanton murder, in violation of Kentucky Revised Statute (KRS) 507.020($l$ )(b), and sentencing him in accord with the jury's recommendation to thirty years in prison. The jury found Allen guilty of killing his girlfriend's three-month old son, Robert Ross, Jr., under circumstances manifesting aggravated wantonness. Allen maintains that the proof at trial permitted a rational juror to

believe not that he acted wantonly, but that he intended to injure the child and while doing so unintentionally killed him. Accordingly, Allen contends the trial court erred by rejecting his request for an instruction on the offense of first-degree manslaughter under KRS 507.030. Agreeing with the trial court that the evidence did not support such an instruction, we affirm.

## RELEVANT FACTS

The Commonwealth's proof included testimony by one of the treating physicians and by the deputy coroner who performed the autopsy. They presented evidence to the effect that the infant suffered a blunt force trauma to his head so severe as to fracture the skull and to cause acute and ultimately fatal swelling of the brain. The autopsy also revealed numerous bruises and fresh fractures of both tibiae, the left clavicle, and one of the left side ribs.

The Commonwealth's proof also included a statement Allen made soon after the child's death to one of the investigators. Allen related that he had recently begun living with Robert's mother, Brandi Ross, and Brandi's father, Robert Cain, at Cain's home in Covington. He described how for several days the child had been unwell, unable to keep down his formula, unable to sleep except for brief periods, and had cried almost constantly. On July 30, 2008, Brandi had gone out with a friend and had left the child with her father. When Allen arrived home from work, he found the child crying, and despite his best efforts through the evening, the child would not be comforted. At some point late in the evening, Allen carried the child upstairs to the bedroom and laid him at the head of the air mattress bed, where he fell asleep. Allen sat at the foot of the bed watching television and masturbating. After only a few minutes, the child woke and again

began to cry. Allen told the investigator that when the child resumed crying he "lost" it, he grabbed the child and shook him, "hard." He then became frightened when he noticed that the child's eyes had rolled back in his head and he seemed to have stopped breathing. Allen claimed that as he was rushing with the child downstairs to get help from Brandi's father, he accidentally hit the child's head against a door. Allen and Cain summoned an ambulance, which took the child first to St. Elizabeth North Hospital. From there he was transferred to the Children's Hospital Medical Center in Cincinnati, where he was pronounced dead on August 1, 2008.

Allen testified at trial, and his testimony accorded, for the most part, with the statement he had given to the police. He added the fact that during the evening of July 30 he consumed beer, marijuana, and cocaine, and, admitting that he had not hit the child's head against a door, he claimed instead that while shaking the infant he had accidentally dropped him on the hardwood floor.

At the close of proof, the Commonwealth sought an instruction on wanton murder, but did not request an instruction on the alternative of intentional murder. It also agreed to instructions on the lesser included offenses of second-degree manslaughter, KRS 507.040 (death caused by unaggravated wantonness), and reckless homicide, KRS 507.050 (death caused by recklessness). Allen moved for an instruction on first-degree manslaughter as well, arguing, as noted above, that from his police statement and testimony the jury could find an unintentional killing arising from an intent to cause serious injury. The trial court denied his motion, noting that generally first-degree manslaughter is not considered a lesser offense of wanton murder and ruling that in any event the

evidence would not support a finding that Allen did not act with aggravated wantonness but did act with the intent to cause serious injury. Because we agree with this latter ruling, we need not resolve whether first-degree manslaughter can ever serve as a lesser included offense of wanton murder.

### ANALYSIS

■■■ As Allen correctly notes, a defendant has a right to have every issue of fact raised by the evidence and material to the defense submitted to the jury on proper instructions. He "is entitled to an instruction on any lawful defense which he has," *Hudson v. Commonwealth*, 202 S.W.3d 17, 20 (Ky.2006), including instructions on lesser included offenses. "Although a lesser included offense is not a defense within the technical meaning of those terms as used in the penal code, it is, in fact and principle, a defense against the higher charge." *Id.* at 20 (citation and internal quotation marks omitted). No instruction is warranted, of course, unless supported by the evidence, and thus "[a]n instruction on a lesser included offense is appropriate if, and only if, on the given evidence a reasonable juror could entertain a reasonable doubt of the defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser charge." *Osborne v. Commonwealth*, 43 S.W.3d 234, 244 (Ky.2001). An appellate court likewise applies this "reasonable juror" standard to a claim that the trial court erred by refusing to give a lesser included offense instruction. Considering the evidence favorably to the proponent of the instruction, we ask, as just noted, whether a reasonable juror could acquit of the greater charge but convict of the lesser. *Thomas v. Commonwealth*, 170 S.W.3d 343 (Ky.2005); *Osborne, supra; Commonwealth v. Wolford*, 4 S.W.3d 534 (Ky.1999).[1]

■■ Generally, of course, a lesser included offense instruction is not required unless the lesser offense is, in fact, "included" within the greater charged offense. *Hudson*, 202 S.W.3d at 21. The trial court expressed reluctance to give Allen's requested instruction on first-degree manslaughter because it doubted that first-

1. As noted, we review a trial court's decision not to give a criminal offense jury instruction under the same "reasonable juror" standard we apply to the review of its decision to give such an instruction. *See Commonwealth v. Benham*, 816 S.W.2d 186 (Ky.1991). Construing the evidence favorably to the proponent of the instruction, we ask whether the evidence would permit a reasonable juror to make the finding the instruction authorizes. We typically do not characterize our review under this standard as either *de novo* or for abuse of discretion, but in some recent cases we have and it may appear that we have done so inconsistently. *See Hunt v. Commonwealth*, 304 S.W.3d 15, 31 (Ky.2009) ("The trial court's decision not to give a jury instruction is reviewed for abuse of discretion."); *Cecil v. Commonwealth*, 297 S.W.3d 12, 18 (Ky.2009) ("We review the trial court's rulings with respect to jury instructions for abuse of discretion."); *Morrow v. Common-* *wealth*, 286 S.W.3d 206, 209 (Ky.2009) ("Because this matter turns on the trial court's determination as to whether to tender a jury instruction, we will engage in a *de novo* review."). In this context, the characterization makes little difference and so the inconsistency is more apparent than real. On the one hand, if the evidence supports an instruction that is otherwise appropriate, the proponent is entitled to the instruction as a matter of law, and to emphasize that entitlement, as we did in *Morrow*, our review can be characterized as *de novo*. On the other hand, to emphasize that the sufficiency of the evidence is measured against a reasonableness standard—the reasonable juror—as we did in *Cecil*, our review can be characterized as for abuse of discretion. Regardless of the characterization, however, the "reasonable juror" is the operative standard, in the appellate court as well as in the trial court.

degree manslaughter could be deemed "included" within the charged offense of wanton murder. Under the pertinent parts of KRS 505.020, a lesser offense is included in a charged offense when "(2)(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or ... (c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission."

■■■ To justify a conviction of first-degree manslaughter, as that offense pertains to this case, the evidence must show that the defendant caused a person's death while intending only to cause serious physical injury. Simply put, it is an intentional offense. Consequently, first-degree manslaughter is generally thought of as a lesser included offense of intentional murder, an offense established by proof that the defendant caused a person's death intending to do so, inasmuch as the intent to injure may be deemed a lesser sort of culpability than the intent to kill. Similarly, second-degree manslaughter, requiring proof that the defendant wantonly caused a person's death, is a standard lesser included offense of wanton murder, which requires proof that the defendant caused a death through aggravated wantonness. Wantonness—the disregarding of a substantial and unjustifiable risk that one's conduct will have an unwanted result, here death—is a lesser kind of culpability than aggravated wantonness, which requires the disregarding of a grave risk of death under circumstances manifesting extreme indifference to human life. KRS 501.020(3); KRS 507.020($l$)(b). Because the Commonwealth was alleging wanton murder and not intentional murder, the trial court understandably hesitated to depart from the usual lesser included offenses of wanton murder and doubted that first-degree manslaughter, in the absence of a charge of intentional murder, could be deemed included.

We sympathize with the trial court's dilemma. Arguably, causing a death while intending to seriously injure is causing a death with a lesser sort of culpability than causing a death through aggravated wantonness, a mental state the law deems as culpable as the intent to kill. Arguably then, under KRS 505.020(c) first-degree manslaughter could be considered a lesser offense included within wanton murder. The fit is not an easy one, however, as the trial court noted, and we might reject it were it not that for double jeopardy purposes it appears likely that first-degree manslaughter would be deemed included within the wanton murder charge. *See, e.g., Ervin v. State*, 991 S.W.2d 804 (Tex. Crim.App.1999) (collecting cases considering whether a single killing can be punished more than once under different homicide statutes).

■■■ We agree with Allen, moreover, that the Commonwealth should not be able, through artful pleading, to deprive a defendant of a colorable defense. *Cf. Allen v. Commonwealth*, 5 S.W.3d 137 (Ky. 1999) (discussing and applying *Elliott v. Commonwealth*, 976 S.W.2d 416 (Ky.1998), which held that self defense, and other intent-based affirmative defenses, could be asserted against charges of wanton or reckless homicides and assaults). It is virtually certain here that had the Commonwealth sought an intentional murder instruction that charge would have withstood a directed verdict motion, and had there been such a charge Allen's request for a first-degree manslaughter instruction would have been assessed as a matter of course for evidentiary sufficiency under the reasonable juror standard discussed above. We do not believe that Allen's entitlement to the instruction should hinge on how the Commonwealth pled its case.

We need not pursue this topic any further, however, or decide if and when first-degree manslaughter should be deemed a lesser included offense of wanton murder, for although the trial court expressed doubts on that score, it ultimately ruled that even if potentially available a first-degree manslaughter instruction was not supported by the evidence presented in this case. We agree.

The question, as noted above, is whether, construing the evidence favorably to Allen, a reasonable juror could doubt that Allen caused Robert's death through aggravated wantonness, but believe that he killed the child unintentionally while intending only to seriously injure him. Allen testified that he neither intended to kill nor intended to harm the child. He contends now, however, that the jury could have rejected that testimony and concluded that Allen did intend to injure. The problem with Allen's contention is that whatever was going through his mind at the time, whether an intent to injure or only a frenzied desire to stop the crying, the conduct he described in his police statement and at trial—the furious snatching up of the child by the leg and the violent shaking, shaking so violent that it broke several of the child's bones, caused his eyes to roll back in his head, and stopped his breathing—so clearly posed a grave risk of killing the child and so clearly manifested Allen's extreme indifference to that possibility that a reasonable juror could not find that Allen engaged in that conduct without also finding that he was guilty of the sort of aggravated wantonness punishable as murder. The evidence, in other words, did not permit a reasonable juror to acquit Allen of murder but convict him of first-degree manslaughter, and in those circumstances a manslaughter instruction is not appropriate. *Cf. Caudill v. Commonwealth,* 120 S.W.3d 635 (Ky. 2003) (holding that a first-degree, intent-to-injure manslaughter instruction was not required where the evidence showed only an intent to kill); *Osborne v. Commonwealth,* 43 S.W.3d 234 (Ky.2001) (same).

### CONCLUSION

In sum, while a defendant is entitled to jury instructions embodying defenses reasonably suggested by the evidence, he is not entitled to instructions for which there is no evidentiary support. Here, the evidence of Allen's unrestrained attack upon an infant did not support a distinction between an intent to injure the child and a wanton disregard of the child's life. The Kenton Circuit Court did not err, therefore, by denying Allen's request for a first-degree manslaughter instruction, and accordingly, we affirm its December 18, 2009 Judgment.

All sitting. All concur.